IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DAVID BRIAN SMITH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-07-1135 |
| STATE OF MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

David Brian Smith ("Smith" or "Plaintiff"), a former inmate at the Maryland Correctional Institution-Jessup ("MCI-J"), brought this prisoner civil rights action against the following defendants: (1) State of Maryland; (2) Mary Ann Saar, the former secretary of the Department of Public Safety and Correctional Services; (3) Frank C. Sizer, Jr., the former Commissioner of the Division of Corrections; (4) John R. Rowley, the former warden of MCI-J; (5) Correctional Sergeant Slats Carter of MCI-J; (6) Correctional Officer Robert Harris; (7) former Correctional Officer Kyle Berkley; (8) Sergeant Wendell Briggs; and (9) and former Correctional Officer Lopez (collectively "Defendants"). Plaintiff alleges that on two separate occasions he was sexually assaulted by a cellmate. Because of these alleged sexual assaults, Plaintiff has asserted four causes of action: (1) violations of the Eighth and Fourteenth Amendments brought pursuant to 42 U.S.C. §1983 (Count I); (2) violations of Articles 24, 25, 26, and 47 of the Maryland Declaration of Rights (Count II); (3) assault and battery (Count III); and (4) intentional infliction of emotional distress (Count IV).

Presently pending before this Court is a Motion to Dismiss or, in the alternative, Motion

for Summary Judgment (Paper No. 35), filed on behalf of all the Defendants.  Because discovery has been completed in this case, this Court will treat Defendants' submission as a Motion for Summary Judgment.  The parties' submissions have been fully briefed and no hearing is necessary on this pending motion.  *See* Local Rule 105.6 (D. Md. 2008).  Plaintiff has failed to demonstrate that he exhausted his administrative remedies.  Furthermore, despite being given the opportunity to proceed with discovery in this case, he has also failed to respond to numerous of valid defenses asserted by Defendants for the dismissal of this case.  Therefore, for these reasons, and as more fully discussed below, Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

As the nonmoving party, the facts are viewed in a light most favorable to the Plaintiff. Plaintiff is a former inmate of the Maryland Division of Correction ("DOC").[1]  After being sentenced to four years for a robbery conviction, Plaintiff began serving his sentence in July 2005.  He was housed at the Maryland Correctional Institute in Jessup, Maryland ("MCI-J") beginning on July 28, 2005 through April 4, 2006.  This case pertains to two separate alleged sexual assaults that occurred during this time period.[2]

**I.     Alleged Sexual Assault by Bernard Byrnes**[3]

---

[1] Plaintiff was paroled on May 1, 2007.

[2] Even though this case deals with two distinct incidents, Plaintiff appears to have had several other incidents involving threats to his safety.  In January and February of 2006, Plaintiff was placed on Administrative Segregation due to alleged threats of physical assault from other inmates.  (Defs.' Exs. 22 & 33.)  On a form dated January 11, 2006, Plaintiff also claimed that Donald Richardson was going to "beat [him] up."  (Defs.' Ex. 32.)

[3] In the Complaint in this case, Plaintiff alleged that he was sexually assaulted by an individual named "Bryan."  In his deposition, Plaintiff indicated that he believed the person he

Plaintiff has alleged that he was sexually assaulted by his cellmate Bernard Byrnes on the evening of March 12, 2006. According to the handwritten Inmate Statement submitted that evening (Defs.' Ex. 11), Byrnes was upset because Plaintiff was not cleaning the sink after using it, and Plaintiff "knew something was going to happen." (*Id.*) Byrnes allegedly pulled Plaintiff off the bunk bed, punched Plaintiff in the back of the head, and forced Plaintiff to perform oral sex on him. (*Id.*) Byrnes then allegedly urinated in Plaintiff's mouth. (Pl.'s Ex. 1, Smith Dep. at 100-02.) Plaintiff stated that he screamed to the correctional officers to move him into another cell. He stated that "they said they were going to move [him]" (Defs.' Ex. 11), but did not immediately do so. Plaintiff specifically mentions that former Correctional Officer Berkley did not move Plaintiff into a new cell. (*Id.*) Plaintiff did not tell the correctional officers about the situation until after the alleged sexual assault occurred (*id.*), and he later testified at deposition that the alleged failure of the Defendants to act did not result in another assault because the alleged communications with Defendants did not occur until afterward. (Defs.' Ex. 23, at 270-271).

After the alleged incident, Plaintiff was taken to the infirmary for a medical evaluation by a registered nurse. (Defs.' Exs. 4, 5.) According to Plaintiff, the medical evaluation occurred approximately nine hours after the alleged incident. (Pl.'s Ex. 1, Smith Dep. at 231-32.) The nurse found no bruising or head trauma, and a physician confirmed that plaintiff needed no further treatment other than Tylenol. (Defs.' Exs. 4, 5.)

In the early morning hours of March 13, 2006, Plaintiff was transported to Mercy Hospital for the Sexual Assault Forensic Examiner ("S.A.F.E.") program at the request of

---

referred to as "Bryan" was actually Bernard Byrnes.

3

Sergeant John Iheoma of the Internal Investigative Unit ("IIU") of the Department of Public Safety and Correctional Services.[4]  After an examination, a "Medical Examination and Report of Alleged Sexual Assault" was produced.  (Defs.' Ex. 6.)  The report indicated that a slight redness of plaintiff's palate near his uvula was seen, but the examination was "otherwise unremarkable." (*Id.*)  Plaintiff informed the staff at Mercy Hospital that he had brushed his teeth after the alleged assault but prior to his examination.  (*Id.*; *see also* Defs.' Ex. 10, IIU Criminal Investigative Report.)   During an interview conducted by the IIU at Mercy Hospital, Plaintiff again stated that the correctional officers did not immediately assist him after the sexual assault.  (Defs.' Ex. 10.) During the IIU's interview with Byrnes, he "emphatically denied" Plaintiff's allegations.  (Defs.' Ex 28, at 4.)

Plaintiff also mentioned Correctional Officer Berkley to the IIU during his interview, but did not mention Correctional Sergeant Carter, Correctional Officer Harris, Sergeant Briggs, or former Correctional Officer Lopez.  (*Id.*)  Correctional Officer Berkley, Correctional Officer Harris, and Sergeant Briggs all indicated in writing on March 12, 2006 (and later through sworn

---

[4] According to the Mercy Hospital web page, which is not in evidence:

> Mercy Medical Center's Sexual Assault Forensic Examiner program was established in February, 1994 . . . .  Through Mercy's S.A.F.E program, victims are seen by a single, specially trained nurse examiner, and experience [a] much shorter length of stay . . . .  The S.A.F.E program works collaboratively with criminal justice agencies, the Sexual Assault Center and other Baltimore agencies addressing the needs of victims of sexual violence . . . .  Victims brought to Mercy Medical Center are medically evaluated as needed by the Emergency Department staff.  Law enforcement officers complete an initial interview prior to the examination.  The exam is performed by the nurse examiner and evidence is collected.

http://www.mercyrn.com/departments/crit_care_safe.html.

deposition testimony) that Plaintiff did not report the alleged sexual assault to them (Defs.' Exs 16-18, 24-26), and former Correctional Officer Lopez stated on March 12, 2006 that he thought he heard a voice coming from Plaintiff's cell, but he was unable to identify the voice because several inmates were calling him (Defs.' Ex. 20). Plaintiff testified, however, that Correctional Officer Berkley "refused" to move Plaintiff from his cell after the alleged sexual assault (Pl.'s Ex. 1, at 92), that Correctional Officer Harris told Plaintiff that he "would get back to him" (*id.* at 91), and that Sergeant Briggs laughed at him (*id.* at 93).

Byrnes was given an infraction notice for the alleged altercation (Defs.' Ex 11), but was later found not guilty of sexual assault at a hearing (Defs.' Ex. 13). Plaintiff did not take any further action, and did not proceed with any administrative appeal.

The swabs taken during Plaintiff's S.A.F.E. examination were submitted to the Maryland State Police Crime Lab (Defs.' Ex. 30), but the evidence was not tested by the lab (Defs.' Ex. 28, at 69.) Sergeant Iheoma, the IIU investigator, testified that he requested the test results on one occasion nine months after the alleged sexual assault, but did not follow up and did not ask a second time. (Pl.'s Ex. 2, at 25-27, 66-67.) Sergeant Iheoma also did not follow up to ensure that the clothing Plaintiff was wearing on the night of March 12, 2006 was tested, even though the clothing had been collected by prison officials after the alleged incident. (*Id.* at 65.) Approximately one year after the alleged assault, Plaintiff provided a handwritten statement to the IIU indicating he was not pursuing charges against Byrnes because "there is no evidence and [he] can't prove it happened." (Defs.' Ex. 29).

**II.    Alleged Sexual Assault by Donald Richardson**

From March 13, 2006 until March 16, 2006, Plaintiff was temporarily assigned to a

5

single cell. Defendants have submitted evidence indicating that the isolated placement was for Administrative Segregation in lieu of Protective Custody (Defs.' Ex. 13, Record of Administrative Segregation Confinement), but Plaintiff characterizes the placement as "solitary confinement" (Pl.'s Resp. 8). On March 16, 2006, plaintiff was placed in a double occupancy cell once again (Defs.' Ex. 2), and on April 1, 2006, Plaintiff was temporarily celled with Donald Richardson (Defs.' Ex. 14, Offender Traffic History). Richardson was housed on the segregation tier for disciplinary reasons, and Plaintiff contends that Richardson's placement with him violated protocol because Plaintiff was not being housed on the segregation tier for disciplinary reasons. (Pl.'s Ex. 6, at 41.) The parties disagree about whether Richardson was on Plaintiff's "enemy list" (*i.e.* a list compiling incompatible cellmates), and Plaintiff contends that he had previously informed Defendants that Richardson was threatening him. (Defs.' Ex. 11.)

Plaintiff was housed with Richardson for three days, and Plaintiff has testified that Richardson repeatedly sexually assaulted him both anally and orally during this time period. (Pl.'s Ex. 1, at 152-53.) The Security Chief at MCI-J at the time, John Wolfe, did not find any documentaion of this alleged sexual assault (Defs.' Ex. 31), and Plaintiff testified that he did not report the alleged assaults committed by Richardson (Defs.' Ex. 23, at 154-158). Thus, there is no official documentation—contemporaneous or otherwise—of this claim. Plaintiff was transferred on April 4, 2006 to another facility. (Defs.' Ex. 2.)

### III.   The Administrative Remedy Process

Although Plaintiff originally contended that Exhibit B to his Complaint was the Administrative Remedy Process ("ARP") form that he submitted to prison officials, he now contends that Exhibit B was simply his own notes regarding the ARP he filed. As this Court has

previously indicated, Exhibit B did not include Plaintiff's name, any details of the alleged incident, and it was not date stamped or given an identification number by prison officials. (*See* Paper No. 20, at 5 n.4.). The ARP coordinator for MCI-J, Sergeant Bertina M. Wilson, has reviewed this document and has declared that (1) she knows that she never received this ARP because of the absence of a date stamp, which is always placed on incoming ARPs (Defs.' Ex. 34, Decl. of Wilson, at ¶6), and that (2) even if Plaintiff had submitted the ARP, there is not enough information to process it (*id.*). The Executive Director of the Inmate Grievance Office ("IGO"), Scott S. Oakley, also has declared that Plaintiff has never filed a grievance with the IGO. (Defs.' Ex. 36, at ¶4.)

Plaintiff now contends that he submitted a properly completed ARP form after the first alleged sexual assault by Byrnes (he admits that he did not submit an ARP form after the second alleged sexual assault involving Richardson), but there is no documentation of such a submission. Sergeant Wilson searched the ARP filings and has declared that Plaintiff never filed an ARP at MCI-J. (Defs.' Ex. 34, at ¶¶ 3-4.) The Defendants' records also indicate that Plaintiff also failed to file any ARPs at MCTC after he was transferred there on April 4, 2006. (Defs.' Ex. 35, Decl. of Fred Walls, at ¶3). Plaintiff does not remember the name of the officer to whom he allegedly gave the ARP and he has no copies of the ARP. Plaintiff also testified that did not attempt to send anything to Division of Correction Headquarters or to the Inmate Grievance Office. (Defs.' Ex. 23, at 204-205.)

Plaintiff testified that he did not file an ARP about the alleged Richardson assaults because he was afraid of retaliation from MCI-J officers, but he does not remember ever being actually threatened. (*Id.* at 218, 253-254.) Plaintiff also testified as follows:

7

> Q. So is it fair to say then after you filed that you weren't frustrated in any efforts in pursuing the grievance?
>
> A. Well, I didn't know that you had to actually – this is all I thought that you had to send in, you know what I mean?
>
> Q. So no one tried to stop you from doing anything else?
>
> A. No.

(*Id.* at 211-212.)

### IV. Procedural History

On May 2, 2007, Plaintiff filed a four-count Complaint in the Circuit Court for Anne Arundel County. On May 2, 2007, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Count I of Plaintiff's Complaint is a 42 U.S.C. § 1983 claim alleging that Defendants deprived Plaintiff of his Eighth and Fourteenth Amendment rights under the United States Constitution. Count II alleges that Defendants' actions constituted a violation of Plaintiff's rights under Articles 24, 25, 26 and 47 of the Maryland Declaration of Rights. Counts III and IV allege that several torts—namely, assault, battery and intentional infliction of emotional distress—were committed against Plaintiff as a result of Defendants' actions.

On June 28, 2007, Defendants filed a Motion for Summary Judgment. (Paper No. 15.) Plaintiff, at that time, had not had any opportunity to conduct a factual investigation, and he expressed a genuine, good faith need to conduct discovery in order to defend against a motion filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, Plaintiff stated that "discovery . . . can validate Plaintiff's assertion that his [Request for Administrative Remedy] was properly submitted . . . [and] can also provide justification for the unavailability of exhaustion and/or prospective relief." (Pl.'s Memo. Supp. Mot. in Opp. 8.) On that basis, this

Court denied Defendants' Motion for Summary Judgment, determining that it could not "assess the merits of the Plaintiff's claims without affording him an opportunity for discovery." (Paper No. 20, at 9.)

Plaintiff conducted the discovery he requested. On February 17, 2009, Defendants filed the instant Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Paper No. 35.) On March 13, 2009, Plaintiff filed an Opposition (Paper No. 38), and on April 6, 2009, Defendants filed a Reply (Paper No. 41).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. Rule 56(c). In *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotations omitted); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The opponent,

however, must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Additionally, the mere existence of a "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiff's case fails for two separate reasons. First, Plaintiff has produced no credible evidence that he exhausted the administrative remedies available to him. Therefore, Defendants' affirmative defense of failure to exhaust bars Plaintiff's claims from being heard by a jury. Second, assuming *arguendo* that there are disputed facts regarding the exhaustion of remedies, Plaintiff is not entitled to have these facts resolved by a jury. Plaintiff only clears an initial hurdle by demonstrating a factual dispute about the exhaustion of remedies. In response to the substantive arguments raised by Defendants, Plaintiff is still required to demonstrate at this stage of the litigation that there are triable issues of fact on the asserted causes of action, and he has failed to carry this burden.

**I.      Failure to Exhaust**

Plaintiff is required to exhaust his administrative remedies for his section 1983 claim (Count I) under the Prison Litigation Reform Act ("PLRA"). This Court explained as follows:

> It is well established under the [PLRA] that Plaintiff must exhaust his administrative remedies before filing suit in this Court. The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that this provision applies to all suits that involve prison life, whether they deal with general prison conditions or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

> This case falls squarely within the ambit of section 1997e(a), and thus Plaintiff[] must exhaust all "administrative remedies as are available" before this Court may hear his case.[5] [footnote in original]
>
> This Court has stated that "the exhaustion requirement under the PLRA has been interpreted to require prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F. Supp. 2d. 523, 530 (D. Md. 2003) *aff'd* 98 Fed. Appx. 253 (4th Cir. 2004) . . . .

(*See* Paper No. 20, at 5.)

Plaintiff is also required to exhaust his administrative remedies for his state law claims (Count II-IV). The Maryland General Assembly has required that, before filing a lawsuit in state court, an inmate must first have had his complaint heard by the Inmate Grievance Office ("IGO") within the Department of Public Safety. Md. Ann. Code, Corr. Serv. Art. § 10-210(a). Moreover, like the federal PLRA, the Maryland Prison Litigation Act requires that an inmate "may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance," *see* Md. Cts. & Jud. Proc. Code Ann., § 5-103(a), and further requires that "the prisoner shall attach to the initial complaint proof that administrative remedies have been exhausted." *See id.* § 5-103(b)(1).

Before filing an Answer in this case, Defendants filed a Motion for Summary Judgment (Paper No. 15), in which they argued, as they have again here, that Plaintiff failed to exhaust his administrative remedies. Plaintiff argued at that time that the ARP attached to his Complaint

---

[5] In *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court determined that the exhaustion requirement is an affirmative defense and therefore "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id*. at 921. Defendants have asserted non-exhaustion as an affirmative defense in this case.

was filed with prison officials.  This Court explained in a footnote the facial deficiencies of the ARP:

> Based on a review of the allegedly submitted Request for Administrative Remedy, the requisite paperwork did not include Smith's name or any details of the alleged incident. (Compl. Ex. B.) As Defendants legitimately point out, the request "was never stamped, never given an identification number and most importantly, does not even contain plaintiff's name." (Def. Mot. at 6). Defendants contend that even if the form was properly received, "there would have been no way to determine who filed it." (*Id.*)

(*See* Paper No. 20, at 5 n. 4.)  This Court also cautioned Plaintiff that his failure to properly exhaust his administrative remedies "may ultimately prove fatal to Plaintiff's claim." (*Id.*) Nonetheless, this Court denied Defendants' Motion for Summary Judgment as being premature, and this Court gave Plaintiff the opportunity to conduct discovery.

Now, after discovery has been completed, Plaintiff has changed his position.  He now argues that Exhibit B to his Complaint was not filed with prison officials, and was instead his own personal notes regarding the ARP that was actually filed.  Before addressing Plaintiff's new position, this Court finds that Exhibit B, even *if* it had been filed with prison officials, is insufficient as a matter of law.  The form lacks any identifying information about Plaintiff, including his name, DOC number, or the institution within which he was housed.  Defendants have submitted affidavits demonstrating that the absence of a date stamp indicates that the form was never received, and that, even if it had been received, it couldn't be processed because of the lack of identifying information. (Defs.' Ex. 34,  Decl. of Wilson, at ¶6; Ex. 36, at ¶4.)

Likewise, Plaintiff's new position fails to create any genuine dispute of material fact. First, he has readily admitted that he never filed an ARP as to the second alleged sexual assault by Richardson, and therefore he may not pursue his case as to that incident in this Court.

12

Second, as to the first alleged sexual assault by Byrnes, the only evidence before this Court that Plaintiff filed an ARP is his own self-serving deposition testimony, which is plainly insufficient to create a material dispute in the face of the sworn statements submitted by Defendants. *See Chase*, 286 F. Supp. 2d. at 530 (finding that inmate's recollection of filing an ARP was alone insufficient "[w]ithout additional evidence or more specific facts"). There is no corroborating evidence to support Plaintiff's bald assertion. In fact, there is absolutely no documentation of an ARP being filed after the alleged incident with Byrnes. (Defs.' Ex. 34, at ¶¶ 3-4; Ex. 35, at ¶3). Further undermining the probative value of Plaintiff's testimony is his utter failure to provide any details of how and to whom he submitted an ARP. In short, viewing the facts in Plaintiff's favor, there is no genuine dispute about whether Plaintiff exhausted his administrative remedies. On the contrary, the evidence quite clearly demonstrates that Plaintiff failed to take even the first step in the administrative review process.[6]

---

[6] Moreover, there is absolutely no evidence that Plaintiff's administrative claim reached the final level of the administrative process. *See Chase*, 286 F. Supp. 2d. at 529 (stating that the final level of the administrative process involves filing an appeal with the IGO). This Court has previously found that "Plaintiff clearly has not pursued his administrative claim through the IGO." (*See* Paper No. 20, at 5-6.) There is nothing before this Court to second guess that previous determination. Plaintiff has claimed that he failed to exhaust his administrative remedies through the IGO because of Defendants' inaction as to the initial ARP. Because there is no probative evidence indicating that the initial ARP was filed, however, this Court need not reach Plaintiff's argument that his failure to appeal was excusable.

Plaintiff's fallback position appears to be that he never took administrative action because he feared retaliation, but there is no evidence of retaliation in the record. Moreover, the Fourth Circuit has recently held that "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Moore v. Bennette*, 517 F.3d 717, 724 (4th Cir. 2008). Instead, "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules.'" *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81 (2006)). Plaintiff has testified that he did not attempt to send anything to DOC Headquarters or to the IGO, (*see* Defs.' Ex. 23, at 204-205), and that "no one tried to stop [him] from doing anything else." (*Id.*)

Therefore, because Plaintiff failed to exhaust his administrative remedies before filing suit in this Court, Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Paper No. 35) is GRANTED.

## II.     Judgment as a Matter of Law

Despite the fact that Defendants have argued that Plaintiff's claims fail on the merits for a variety of reasons, Plaintiff's opposition brief is devoted almost entirely to Defendants' administrative exhaustion argument.  Therefore, most of Defendants' additional arguments are not contested.  For the following reasons, Plaintiff's claims also fail as a matter of law.

### A.     Federal Constitutional Claims — Count I

Plaintiff's section 1983 claims asserted in Count I fail as a matter of law as to Defendants Mary Ann Saar, Frank C. Sizer, Jr., and John R. Rowley.  Defendants Saar and Sizer were the heads of the Department of Public Safety and Correctional Services and the Division of Corrections, respectively, and Defendant Rowley served as Warden of MCI-J at the time of the alleged assaults.  There are no direct allegations against any of these three Defendants, and there is likewise no evidence indicating their direct involvement in the alleged sexual assaults.  In the absence of any direct allegations or evidence, a case against them may not be maintained because it is black letter law that there is no respondeat superior liability under section 1983. *See Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).

Additionally, assuming that Plaintiff was sexually assaulted by both Byrnes and Richardson, Count I must also be dismissed as to the remaining individual Defendants.  As to the Byrnes' incident, Plaintiff has readily admitted that the alleged failure of the Defendants to act did not result in another assault because the alleged communications with Defendants did not

occur until after the assault. (Defs.' Ex. 23, at 270-271). Thus, Plaintiff cannot maintain a claim against the remaining individual Defendants for deliberate indifference when they did not know about the potential harm before the alleged sexual assault took place. As to the Richardson incident, Plaintiff admits that Defendants Berkley, Harris, Briggs, and Lopez had nothing to do with this assault. (Defs.' Ex. 23, at 156, 279-280). Plaintiff claims that Sergeant Carter placed Richardson in his cell with knowledge that Richardson posed a risk of harm to Plaintiff. Sergeant Carter testified that he does recall Richardson, and does not remember placing him in Plaintiff's cell. Plaintiff testified that he had no communication with Sergeant Carter about Richardson. There is simply insufficient evidence indicating that Sergeant Carter placed Richardson in the same cell with Plaintiff with knowledge of the potential harm.

### B. State Constitutional Claims — Count II

Plaintiff has cited to Articles 24, 25, 26, and 47 of the Maryland Declaration of Rights in Count II. Under Maryland law, Articles 24 and 25 are interpreted *in pari materia* with their federal counterparts, the Fourteenth and Eighth Amendments. *See, e.g., Pitsenberger v. Pitsenberger*, 410 A.2d 1052, 1056 (Md. 1980) ("[I]t should be pointed out that Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and that Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24."); *Arvanis v. Somerset County*, 664 A.2d 888, 894-95 (Md. 1995), *cert. denied*, 516 U.S. 1115 (1996) ("Article 25 is, textually and historically, substantially identical to the Eighth Amendment. Indeed, both of them were taken virtually verbatim from the English Bill of Rights of 1689. Thus, it is well settled in this State

that Article 25 of the Maryland Declaration of Rights is *in para materia* with the Eighth Amendment."). Therefore, for the same reasons that Plaintiff's federal constitutional claims fail, Plaintiff's claims under Articles 24 and 25 also fail.

Plaintiff's claims under Articles 26 and 47 also fail. Article 26 deals entirely with the issuance of warrants, and has no bearing whatsoever on the allegations contained in the Complaint. Article 47, which provides rights for victims of crimes, expressly provides that "[n]othing in this Article permits any civil cause of action for monetary damages for violation of any of its provisions or authorizes a victim of a crime to take any action to stay a criminal justice proceeding."

### C. State Common Law Claims — Count III & IV

Plaintiff's assault and battery claim (Count III) fails as a matter of law for the simple reason that none of the Defendants in this case actually committed any direct action against Plaintiff, and there is no evidence that the Defendants intended to cause an assault or battery by placing Plaintiff in cells with Byrnes and Richardson. Plaintiff's intentional infliction of emotional distress claim (Count IV) also fails as a matter of law. Plaintiff has failed to produce sufficient evidence indicating that any of the Defendants acted intentionally to cause Plaintiff severe emotional harm. *See Vance v. Vance*, 408 A.2d 728, 737 (Md. 1979) (holding that "the defendant's conduct is intentional or reckless where he desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct, or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow").

Therefore, in addition to Plaintiff's failure to exhaust administrative remedies, Plaintiff's

claims also fail as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Paper No. 35) is GRANTED.  A separate order follows.


August 26, 2009                                         /s/_____
                                                                   Richard D. Bennett
                                                                   United States District Judge